UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:07-HC-2167-D-JG

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Petitioner, | ) | PETITIONER'S PROPOSED |
| | ) | FINDINGS OF FACT AND |
| v. | ) | CONCLUSIONS OF LAW |
| | ) | |
| MARC CHRISTOPHER TURNER, | ) | |
| Respondent. | ) | |

Petitioner, by and through the United States Attorney's Office for the Eastern District of North Carolina, proposes the following findings of fact and conclusions of law.

## I.  INTRODUCTION

The United States of America ("Petitioner") seeks to civilly commit Respondent Marc Christopher Turner ("Turner" or "Respondent") as a "sexually dangerous person" under Section 302(4) of the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub. L. No. 109-248, Title 111, § 302(4), 120 Stat. 587, 620-22 (2006), codified at 18 U.S.C. §§ 4247-4248.

In order to commit Respondent, Petitioner must prove by clear and convincing evidence that he is "sexually dangerous." Under the Adam Walsh Act, a person is sexually dangerous if he "has engaged or attempted to engage in sexually violent conduct

or child molestation and . . . is sexually dangerous to others."
18 U.S.C. § 4247(a)(5). In order to determine that Turner is
sexually dangerous to others, this court must find he "suffers
from a serious mental illness, abnormality, or disorder as a
result of which he would have serious difficulty in refraining
from sexually violent conduct or child molestation if released."
Id. § 4247(a)(6).

"Sexually violent conduct includes any unlawful conduct of
a sexual nature with another person ("the victim") that
involves, inter alia, "threatening or placing the victim in fear
that the victim, or any other person, will be harmed." See 28
C.F.R. § 549.92(b). "Child molestation includes any unlawful
conduct of a sexual nature with, or sexual exploitation of, a
person under the age of 18." See 28 C.F.R. § 549.93.

The evidentiary hearing in this matter was held on February
27 and 28, 2012.

## II. BACKGROUND

### A. Criminal Conduct

Marc Christopher Turner was 38 years old at the time of the
evidentiary hearing. He has been in federal custody since 2007,
following the revocation of his supervised release and being
certified as a Sexually Dangerous Person on September 7, 2007.

Turner's underlying federal convictions are for Distribution of Visual Depiction of Minor Engaging in Sexually Explicit Conduct (i.e. child pornography), for which he was sentenced to forty-six (46) months imprisonment and three years supervised release. (Gov't Exs. 7, 9, 10.) According to his Presentence Investigation Report, (Gov't Ex. 11), Turner, who was 27 years old at the time, sent images of child pornography via e-mail to a friend named Tamberlane, using email accounts in other peoples' names. (<u>Id.</u>, at ¶3.)

The first e-mail Turner sent was entitled "Missing Girl," and contained a photograph of a pre-pubescent girl performing oral sex on an adult male. (Gov't Ex. 11, at ¶3.) The message implied that Tambralane's four-year-old daughter could be involved in the same conduct depicted in the photo. (<u>Id.</u>) The second email Turner sent was entitled "You Misunderstand," and included multiple photographs of a pre-pubescent female engaged in oral sex with an adult male. (<u>Id.</u>, at ¶4.) The message was sexually oriented and questioned how Tambralane would feel if she came home to find her young daughter engaged in sexual conduct like that in the attached photographs. (<u>Id.</u>) The third e-mail Turner sent was entitled "This goes out to Tambralane." (<u>Id.</u>, at ¶5.) The email attachments included four photographs

in which an adult male was ejaculating on the faces of adult females. (Id.) In a fourth e-mail, Turner expressed his desire to engage in sexual behavior with Tambralane's four-year-old daughter, and attached a photograph of an adult male ejaculating on the face and chest of a nude pre-pubescent girl. (Id., at ¶6.)

Turner used aliases to send the aforementioned emails. (Gov't Ex. 11, ¶¶3-8.) A search of Turner's home resulted in the seizure of more than fifty (50) images of children involved in sexually explicit conduct. (Gov't Ex. 11, at ¶8.) During the investigation it was learned that Turner was also communicating via email with a 13-year-old girl, and that he had sent multiple emails to another woman in May 2000, threatening rape and soliciting sexual contact with her female children. (Id.)

Prior to his sentencing, Turner was evaluated by Dr. Christopher Heard. (Gov't Ex. 22.) Dr. Heard opined that Turner suffered from pedophilia, exhibitionism, generalized anxiety disorder, and chronic post traumatic stress disorder. (Id.)

Turner has prior convictions for indecent exposure. (Gov't Ex. 8, at 1558-1559; Gov't Ex. 11, ¶¶27-28; Gov't Ex. 23.) In January 1997, at the age of 23, Turner exposed his penis to

multiple children in a grocery store and masturbated in their presence. (Gov't Ex. 8, at 1558-59). When confronted by law enforcement, Turner stated he had never masturbated in public before, but the urge had been there for about 6 years. (Id., at 1559.) He admitted he was sexually excited by children and that he often thinks about having sex with them. (Id.) Turner pleaded guilty to Indecent Exposure and was sentenced to 3 years probation and 60 days in jail. (Id.)

In July 1998, at the age of 24 and while on probation for the aforementioned offense, Turner exposed himself to a woman and her five year old daughter. (Gov't Ex. 8, at 1559.) He pleaded guilty to Indecent Exposure, and was ordered to participate in sex offender treatment. (Id.)

In May 2006, at the age of 32 and while on federal supervised release, Turner exposed his penis to a three-year-old girl at a "Big Lots" store. (Gov't Ex. 8, at 1562-66). During the investigation, Turner admitted he had a problem exposing himself and that he was a "pedophile." (Id., at 1565.) Turner pleaded no contest to the charges and was sentenced to probation. (Id.)

Subsequently, Turner's federal supervised release was also revoked. (Gov't Ex. 7.) He was found to have violated

conditions of supervised release for having unauthorized internet access, failing to provide personal phone records, and failing to submit monthly supervision forms. (Id.)

## B.  Sex Offender Treatment at Butner

While serving his initial federal prison sentence, Turner participated in the Sex Offender Treatment Program ("SOTP") at FCI Butner from March 22, 2002, until he was expelled from the program on October 30, 2003. (Gov't Ex. 13.)  During treatment Turner admitted the following:

(a)  He described an extensive sexual fantasy life combined with excessive masturbatory practices;

(b)  He described a strong sexual preference to pre and post pubescent females;

(c)  He admitted to a history of undetected sexually deviant behaviors including voyeurism and exposing himself to known and unknown minor females as adolescents and adults;

(d)  He admitted to sexually molesting his 9-year-old cousin when he was 16;

(e)  He admitted to masturbating and ejaculating on a 12-year-old when he was 17;

(f)  He admitted that between the ages of 23 and 26, he had oral and vaginal sexual contact with four girls between the ages of 9 and 16;

(g)  He admitted he forced a 5-year-old girl to fondle his penis, and exposing her to pornography when the victim's mother was in an adjoining room;

(h)  He admitted that when he was 27 years old he groomed a

6

13-year-old girl and molested her on several occasions;

(i) He reported that he began viewing, collecting, and exchanging child pornography when he was 24;

(j) He admitted to communicating with other sexually deviant individuals who fostered sexual abuse of children for more than 3 years;

(k) He admitted that he sought child pornography images that involved minor females between the ages of 4 to 17 being sexually abused by adults;

(l) He admitted to viewing pornography on a daily basis and reported immense sexual pleasure from this behavior;

(m) He admitted to trading more than 300 images of child porn on the internet and developed a personal website containing child porn;

(n) He reported sexual gratification from eliciting fear from his victims and would taunt women using his knowledge of their personal history and threats of sexual molestation of their young daughters.

(Gov't Ex. 13, at 1186-87.) At his Adam Walsh hearing, Turner testified that the self-disclosures he made during his participation in SOTP were untrue.

Turner was expelled from SOTP for repeatedly violating rules and regulations of the program, making poor treatment progress, and being resistant to change. (Gov't Ex. 13, at 1188.) He was defensive and resistant to feedback, refused responsibility for his sexually deviant behavior, and engaged in self destructive behavior in order to gain the attention of

others.  (Id.)  He was also viewed as a negative influence on the treatment community.  (Id.)

### C.  Materials confiscated from Turner's cell.

On July 15, 2010, after being certified as a sexually dangerous person, BOP officials located in Turner's cell two photo albums containing one hundred and sixty (160) photos of young females, some partially nude, in sexually suggestive poses wearing lingerie, bikinis, and pajamas.  (Gov't Ex. 6.)  BOP officials also found three photos of a pubescent female fully nude and a photo of two pre-pubescent girls laying on a bed wearing t-shirts and tank tops.  (Id.)

On May 11, 2011, during a search of Turner's cell, BOP officials found four inappropriate magazines in his possession and a photo of a woman performing oral sex on a man.  (Gov't Ex. 24.)

## III.  DISCUSSION

Under the Adam Walsh Act, the government has the burden of proving that Turner is sexually dangerous by clear and convincing evidence.  18 U.S.C. § 4248(d).  The clear and convincing evidence standard is an "intermediate standard," lying somewhere "'between preponderance of the evidence and proof beyond a reasonable doubt.'"  United States v. Hunt, 643

F.Supp.2d 161, 179 (D.Mass. 2009)(quoting Addington v. Texas, 441 U.S. 418, 425 (1979)).  The government must produce "'[e]vidence indicating that the thing to be proved is highly probable or reasonably certain.'" Id. (alteration in original)(quoting Black's Law Dictionary 596 (8th ed. 2004)).

Thus, in order to prove that Turner is a "sexually dangerous person," the government must prove three elements by clear and convincing evidence: (1) that Turner engaged in or attempted to engage in sexually violent conduct or child molestation; (2) that Turner suffers from a serious mental illness, abnormality, or disorder; and (3) that, as a result of the serious mental illness, abnormality, or disorder, Turner would have serious difficulty in refraining from sexually violent conduct or child molestation if he were to be released. See 18 U.S.C. § 4247(a)(5)-(6); 18 U.S.C. § 4248.

Three experts testified at the evidentiary hearing.  Dale Arnold, Ph.D., and Tanya Cunic, Psy.D., testified on behalf of the Petitioner.  John Warren, Ph.D., testified on behalf of Turner.  The Respondent also testified during Petitioner's case-in-chief.

### A.  Past Child Molestation or Sexually Violent Conduct

The court finds that Turner has engaged in both child

molestation and sexually violent conduct. The court therefore finds that the first criterion under the Adam Walsh Act, that Turner has "engaged or attempted to engage in sexually violent conduct or child molestation" in the past, is satisfied by clear and convincing evidence. See 18 U.S.C. § 4247(a)(5).

First, in 1997, Turner followed multiple children from aisle to aisle in a grocery store, exposing himself and masturbating in their presence. This conduct involved the sexual exploitation of persons under the age of 18, and is therefore child molestation. See 28 C.F.R. § 549.93.

Second, in 2000, Turner sent images of child pornography via e-mail to a friend suggesting that her four-year-old daughter could be involved in the same conduct depicted in the photograph, which depicted a young girl performing oral sex on an adult male. He sent another e-mail to his friend in which he questioned how she would feel if she came home to find her four year old daughter in sexual conduct like that in a photograph that depicted a girl performing oral sex on an adult male. He also expressed his desire to engage in sexual behavior with the four-year-old daughter in an email that included photographs of an adult male ejaculating on the face and chest of a nude pre-pubescent girl. Turner has also sent emails threatening rape

and soliciting sexual contact with female children. This conduct constitutes sexually violent conduct under the Adam Walsh Act as it involves threatening or placing the victim in fear that the victim, or another person, will be harmed. See 28 C.F.R. § 549.92(b).

## B. Serious Mental Illness, Abnormality, or Disorder

To meet its burden of establishing that Turner is "sexually dangerous to others," the government must also prove by clear and convincing evidence that Turner "suffers from a serious mental illness, abnormality, or disorder." 18 U.S.C. §4247(a)(6).

### 1. Evaluation of Dr. Dale Arnold

Dr. Dale Arnold ("Dr. Arnold") is a forensic psychologist, and opined that Turner meets the criteria for civil commitment as a sexually dangerous person. (Gov't Ex. 3.) Dr. Arnold diagnosed Turner with Pedophilia and Exhibitionism. (Gov't Ex. 2, 3.) He characterized Pedophilia and Exhibitionism as serious mental illnesses, abnormalities, or disorders.

According to Dr. Arnold, pedophilia is defined in The Diagnostic and Statistical Manual of Mental Disorders – Fourth Edition – Text Revision (DSM-IV-TR) as follows:

> [A] disorder involving recurrent, intense, sexually arousing fantasies, sexual urges, or behaviors involving

11

sexual activities with a pre-pubescent child or children, generally age 13 years or younger. The fantasies, urges or behaviors occur for at least six months. Further, the person has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty. Finally, the person has to be at least 16 and more than five years older than the child.

(Gov't Ex. 2, at 1764.)

In support of his diagnosis of Pedophilia, Dr. Arnold noted, among other things, the following:

[Turner] began to notice he was attracted to prepubescent females by the ninth grade. As Turner grew older and had opportunities to be sexually active with older, peer aged females, he continued to fantasize about prepubescent females. While in a dating relationship at age 17, Turner was persistently attracted to his girlfriend's eight year old sister. Through the years, this attraction to prepubescent females has increased through repetitive masturbation to fantasies and viewing child pornography. Based mostly on Mr. Turner's self report, it is known he has acted on these sexual urges by committing contact offenses (i.e., child molestation) on several occasions. These deviant sexual fantasies and urges have persisted despite participation in at least three separate treatment programs designed to improve his self control in this area. Indeed, within the last three months Mr. Turner was detected of possessing a number of pictures that could be used to enhance and stimulate his sexual fantasies of children. Although it's noted he molested a younger nephew and he showed some arousal to males on the PPG, it appears that he's far more attracted to females than males. Further, because Mr. Turner is also sexually attracted to adults, this diagnosis was listed as non-exclusive. In short, Mr. Turner has suffered from recurrent, intense, sexual urges and fantasies involving prepubescent females for over 20 years, he has acted on these urges, and he has experienced psychosocial distress and dysfunction because of them. Thus, he meets the diagnostic criteria for pedophilia.

(Gov't Ex. 2, at 1764.)

Regarding his diagnosis of Exhibitionism, Dr. Arnold noted the DSM-IV-TR states a person meets the diagnostic criteria for Exhibitionism when they have suffered recurrent, intense sexually arousing fantasies, sexual urges or behaviors involving the exposure of their genitalia to unsuspecting strangers. (Gov't Ex. 2, at 1765.) Furthermore, the person must have either acted on the sexual urges or the urges or fantasies must cause marked distress or interpersonal difficulty. (Id.)

In support of his diagnosis of Exhibitionism, Dr. Arnold noted that this is the behavior Turner has most often been detected of, and Turner has reported sexual arousal to these situations. (Gov't Ex. 2, at 1765.) Consistent with his preference to have sexual contact with prepubescent children, he also prefers to expose himself to children rather than adults. (Id.) Dr. Arnold found it significant that this condition began in early adolescence (at least by age 13) and has continued despite numerous sanctions and treatment attempts. (Id.)

### 2.   Evaluation of Dr. Tanya Cunic

Dr. Tanya Cunic is a forensic psychologist, and is currently employed by the Bureau of Prisons. She also opined that Turner meets the criteria for commitment under the Adam

13

Walsh Act.  She diagnoses Turner with (1) Pedophilia, Sexually Attracted to Females, Non-Exclusive Type, (2) Exhibitionism, and (3) Antisocial Personality Disorder.  (Gov't Ex. 5, at 9-11).  She characterizes these as serious mental illnesses, abnormalities, or disorders.  (Id., at 12.)

In support of her diagnosis of pedophilia, Dr. Cunic notes Turner's self-report of having a sexual attraction to prepubescent girls while in sex offender treatment, and in a 1997 interview with law enforcement when he admitted to thinking about having sex with children, primarily girls.  (Gov't Ex. 5, at 9.)  Dr. Cunic also notes that Turner maintained a collection of sexually explicit materials which primarily featured prepubescent girls engaged in sexual behavior, and the penile plethysmograph (PPG) data that supports his verbalized desires.  (Id.)  According to Dr. Cunic, Turner's behaviors provide diagnostic evidence of his pedophilia in that he has acted on his impulses to have sexual contact with children and his impulses and behaviors have caused him marked distress or difficulty as evidenced by revocation of supervised release and legal charges.  (Id.)

In support of her diagnosis of Exhibitionism, Dr. Cunic notes that Turner has a history of exposing his genitals to non-

consenting individuals over a period of at least six months. (Gov't Ex. 5, at 9.) Turner has reported he began engaging in this behavior at age of 13. (Id.) He was legally sanctioned for his behavior in 1997, 1998, and 2006. (Id.) She opines that his behavior has been resistant to probationary management techniques and psychological interventions. (Id.) Moreover, the consequences of his behavior provide evidence of significant impairment in social, interpersonal, and occupational functioning. (Id.)

With respect to her diagnosis of Antisocial Personality Disorder, Dr. Cunic explains that a personality disorder is characterized by a constellation of dysfunctional personality characteristics and maladaptive behaviors which are pervasive and enduring, and are of sufficient intensity to produce impairment in important areas of functioning (such as social, occupational, marital, financial, interpersonal, and parental). (Gov't Ex. 5, at 9-10). These individuals consistently experience, perceive, and interpret events in a manner different from those around them, which leads them into conflict with others. (Id.) According to Dr. Cunic, the essential feature of a personality disorder is an enduring pattern of inner experience and behavior that deviates markedly from the

15

expectations of the individual's culture and is manifested in the following areas: cognition, the way they perceive and interpret themselves, other people, and events; affectivity, the range, intensity, lability, and appropriateness of emotional response; interpersonal functioning; and impulse control. (Id.)

Dr. Cunic further explains that the essential feature of Antisocial Personality Disorder is a pervasive pattern of disregard for and violation of the rights of others that begins in early childhood or early adolescence and continues into adulthood. (Gov't Ex. 5, at 10.) The diagnosis of Antisocial Personality Disorder requires that some symptoms of Conduct Disorder, which is considered to be a precursor to the development of Antisocial Personality Disorder, must be present prior to the age of 15. (Id.) The specific behaviors characteristic of Conduct Disorder fall into four categories: aggression to people and animals, destruction of property, deceitfulness or theft, or serious violation of rules. (Id.) In this regard, Dr. Cunic notes that prior to the age of 15, Mr. Turner sexually offended against younger children, abused drugs, and had disciplinary sanctions while in school for fighting. (Id.)

Dr. Cunic also notes that Antisocial Personality Disorder is exhibited by the failure to conform to social norms with respect to lawful behaviors as indicated by repeatedly performing acts that are grounds for arrest. (Gov't Ex. 5, at 10.) Individuals with the diagnosis of Antisocial Personality Disorder disregard the wishes, rights, and feelings of others, and are frequently deceitful and manipulative in order to gain personal profit or pleasure. (Id.) Individuals with Antisocial Personality Disorder tend to be impulsive and make decisions on the spur of the moment, without forethought, and without consideration for the consequences to themselves or others. (Id.) This may lead to sudden changes of jobs, residences, or relationships. (Id.) In this regard, Dr. Cunic notes that Turner's history shows ample evidence of impulsivity as evidenced by relatively short periods of employment and disintegration of relationships. (Id.)

Another criteria for the diagnosis of Antisocial Personality Disorder is the lack of remorse for the consequences of their actions as indicated by being indifferent to or rationalizing the hurt, maltreatment, or stealing from another. (Gov't Ex. 5, at 10.) Treatment records suggest Turner had a "profound lack of remorse" regarding his sexual victims. (Id.)

An additional criterion used in the diagnosis of Antisocial Personality Disorder is irritability and aggressiveness. (Id.) Turner has demonstrated aggressiveness and intimidating behavior. (Id.) Deceit and manipulation are also central features of Antisocial Personality Disorder, with lack of empathy, callousness, cynicism, and contempt for the feelings, rights, and sufferings of others as associated symptoms. (Id.) Dr. Tunic opines that Turner's callousness and lack of empathy is highlighted by his e-mail harassment of a victim while acting as her confidant. (Id.)

### 3. Evaluation of Dr. John Warren

Dr. John Warren ("Dr. Warren") is a forensic psychologist. He does not give an opinion as to whether Turner meets the criteria for civil commitment under the Adam Walsh Act. (Resp. Ex. 1.)

Dr. Warren does opine that Turner suffers from Pedophilia and Exhibitionism. (Resp. Ex. 1.) He testified that these disorders are generally not considered to be "serious mental disorders," but he does not offer an opinion as to whether they are "a serious mental illness, abnormality, or disorder" for Turner. (Resp. Ex. 1.)

The Court credits the testimony of Drs. Arnold and Cunic,

and gives their opinions greater weight than the opinion of Dr. Warren. Drs. Arnold and Cunic both agree that Turner suffers from pedophilia and exhibitionism, which they conclude are serious mental illnesses, abnormalities, or disorders. This court finds that each is a serious mental illness, abnormality, or disorder that obviously plagues Turner. Accordingly, the government has met its burden of proving the second element under the Adam Walsh Act by clear and convincing evidence.

## C.  Serious Difficulty Refraining

To meet its burden of establishing that Turner is "sexually dangerous to others," the government must also prove by clear and convincing evidence that if released, Turner "would have serious difficulty in refraining from sexually violent conduct or child molestation" as a result of his serious mental illness, abnormality, or disorder."  18 U.S.C. §4247(a)(6).  Merely the presence of a sexual attraction to minors is insufficient to meet this prong of the test for civil commitment if the person the government seeks to commit has developed skills necessary to overcome the urges to have sexual contact with minors without difficulty.  See United States v. Carta, 2011 WL 2680734, slip op., at *22 (D. Mass. July 7, 2011)(holding the final analysis must not be just whether a respondent exhibits traits shared by

19

recidivists, but rather the respondent's volitional control must be "viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself. . . [in such a way that] distinguish[es] [him] from the dangerous but typical recidivist convicted in an ordinary criminal case.")

The determination under this prong requires the Court to consider Turner's volitional control over his actions understood in relation to his mental illness, and it is also informed by the constitutional constraints on the civil commitment scheme. See United States v. Red Star, No. 5:06-hc-2222 (E.D.N.C. filed January 3, 2012)(Britt, J.). In Kansas v. Crane, 534 U.S. 411, 413 (2002), the Supreme Court held that in order to civilly commit someone for sexual dangerousness "there must be proof of serious difficultly in controlling behavior." Under this standard, courts are allowed wide discretion in relying on a number of different factors relevant to sexual dangerousness. Red Star, at *6. The standard does not have "any kind of narrow or technical meaning;" nor is it demonstrable with "mathematical precision." Crane, 534 U.S. at 413.

Under this prong, the government need not establish that the person it seeks to commit will, or is likely to, reoffend.

See <u>United States v. Hunt</u>, 643 F.Supp.2d 161, 179-81 (D. Mass. 2009). Indeed, the court does not construe the criterion for commitment to require proof of any statistical probability of reoffense. <u>See</u> <u>Red Star</u>, at *6. Thus, recidivism rates are circumstantially relevant to the serious difficulty inquiry because offenders who continually expose themselves to punishment may be presumed to have the most difficulty refraining from sexual reoffending. <u>Id.</u> But the ultimate question called for by the Adam Walsh Act concerns the self-control of an individual, not the statistical re-arrest patterns of a given population. <u>Id.</u> Thus, the court considers the recidivism rates associated with Turner's actuarial scores, but affords them less weight than Turner's past and current conduct, and the testimony of the experts as a whole. <u>Id.</u>, at *6-7.

## 1. Dr. Arnold's Opinion re: "Serious Difficulty Refraining"

Dr. Arnold opined that the combination of Turner's DSM-IV-TR diagnoses results in a serious mental illness, abnormality, or disorder that will cause Turner to have serious difficulty in refraining from sexually violent conduct or child molestation if released. (Gov't Ex. 2, at 1766-1772; Gov't Ex. 3, at 2026-2031.) Dr. Arnold considered case specific factors as well as instruments that allow comparison to groups of sexual offenders

21

whose sexual offense recidivism has been studied. (Gov't Ex. 3, at 2026.)

With respect to individual case factors, Dr. Arnold noted that Turner is a person who was detected of his first sex offense crime in 1997 and reported his sexual interest in children and exhibitionism had bothered him for approximately six years and caused him to consider seeking help on his own. (Gov't Ex. 3, at 2028.) After suffering both private and public consequences for his behavior, he was provided with treatment to improve his self-control. (Id.) Despite that treatment, Mr. Turner reoffended in 1998. (Id.) After being ordered to continue treatment, Turner was alleged to commit sexual crimes in May and June 2000, just about the time he had finished treatment. (Id.) Turner was aware of the possibility he could be arrested at any time for those allegations when he committed additional sexual crimes in August 2000. (Id.) After more severe consequences (federal prison) and more intensive treatment and supervision, Turner committed his last known sexual crime in May 2006 when he exposed himself to a three year old girl. (Id.)

Dr. Arnold also did an actuarial analysis of static risk factors that are historical (unchangeable) and based upon

characteristics of a sex offender's criminal history, and an analysis of relevant dynamic risk factors. (Gov't Ex. 2, at 1766-1772; Gov't Ex. 3, at 2026-31.) He used the following actuarial measures to assess Turner's risk of future sexual reoffense: (1) the STATIC-99R; (2) the STATIC-2002R; and (3) the Minnesota Sexual Offender Screening Tool-Revised ("MnSOST-R"). (Gov't Ex. 3, at 2027-30.) He noted that Turner's scores on these instruments categorized him as a "High" risk level. (Id., at 2027.)

Turner's score on the STATIC-99R was 7, placing him in the 98th percentile of sex offenders, which is associated with a sexual recidivism rate of 38% in 5 years, and 49% in ten years. (Gov't Ex. 3, at 2027.) His score on the STATIC-2002R was 9, which placed him in the 99th percentile of sex offenders, and is associated with a sexual recidivism rate of 42% in 5 years and 52% in ten years. (Id.) Turner's score on the MnSOST-R was 9, which placed in the 86th percentile of sex offenders, and is associated with a sexual recidivism rate of 30% in six years. (Id.)

Ultimately, Dr. Arnold opined that the pattern of sexual behavior in the context of multiple sanctions and opportunities for treatment, support the conclusion that Turner will have

serious difficult refraining from sexually violent conduct or child molestation if released. (Gov't Ex. 3, at 2028.) In further support of his opinion, Dr. Arnold notes that Turner fails to appreciate the seriousness of his behavior, has no firm plans to participate in treatment if he is released, and has virtually no social supports who would actively encourage him to refrain from similar behavior in the future. (Id.)

## 2. Dr. Cunic's Opinion re: "Serious Difficulty Refraining"

In addressing the third prong of the Adam Walsh Act as it relates to Turner, Dr. Cunic evaluated Turner's risk of reoffense using the STATIC-99R. (Gov't Ex. 5, at 11-12.) She scored Turner as a 7 on the STATIC-99R, which placed Turner in the "High" risk category. (Id.) Sex offenders with the same score as Turner and with similar characteristics to Turner have been found to sexually reoffend at a rate of 37.9% in 5 years, and 48.6% in ten years. (Id.)

Dr. Cunic also opined that Turner possesses empirically supported dynamic risk factors that may exacerbate his overall risk. (Gov't Ex. 5, at 12.) She believes the following dynamic factors may increase his risk: (1) failure to abide by conditions of release, (2) failure to complete sex offender treatment, (3) presence of paraphilias, specifically his

24

pedophilia and exhibitionism, (4) history of substance abuse, (5) social maladjustment beginning at an early age, (6) poor management of anger and negative mood, (7) and his antisocial personality disorder. (Id.)

Dr. Cunic also considered mitigating factors that could reduce Turner's risk of reoffense. (Gov't Ex. 5, at 12.) These factors include (1) residing in the community offense free for a significant period of time, (2) completion of a cognitive behavioral sex offender treatment program, and (3) less than 15 years in the offender's time due to age or health. (Id.) Dr. Cunic opined that none of these factors applied with respect to Turner such that his risk was mitigated. (Id.)

### 3.  Dr. Warren's Opinion re: "Serious Difficulty Refraining"

Dr. Warren opined that Turner's best predicted risk of re-offending is more likely than not substantially lower than the known recidivism risk of general offenders released from prison. (Resp. Ex. 1, at 2.)

Dr. Warren believes Turner's risk is mitigated by the fact that Turner does not have a mental disorder that overrides his volitional control. (Resp. Ex. 1, at 2.) He also believes the following factors mitigate his risk: (1) the nature and duration of his incarceration, (2) his exposure to two sexual offender

25

treatment paradigms, (3) the history of his only certain contact offense having been twenty-two years ago, and (4) the natural decrease in libido that comes with aging. (Id.)

Dr. Warren evaluated Turner's risk of reoffense using the STATIC-99R. (Resp. Ex. 1, at 5.) He scored Turner as a 6 on the STATIC-99R. (Id.) According to Dr. Warren, sex offenders with the same score as Turner and with similar characteristics to Turner have been found to sexually reoffend at a rate of 14.7% in 5 years. (Id.)

Dr. Warren also considered "dynamic factors," in assessing Turner's risk to reoffend. (Resp. Ex. 1, at 6.) He explained that these are factors that are more individually based, empirically related to risk of sexual recidivism and amenable to change over time or with therapeutic intervention. (Id.) According to Dr. Warren, the following factors are "protective," meaning they mitigate Turner's risk to reoffend: (1) significant social influences, (2) sexual self-regulation, (3) general self-regulation, and (4) cognitive problem solving skills. (Id.)

In this case, greater weight must be given to the opinions of Drs. Arnold and Cunic. Their analysis of Turner's sexual dangerousness is more thorough, better reasoned, more consistent with the record, and therefore more convincing. The evidence in

this case supports the conclusion that Turner would have "serious difficulty in refraining from sexually violent conduct or child molestation if released." Turner clearly has not developed the skills necessary to overcome the urge of committing acts of child molestation or sexually violent conduct without serious difficulty.

## IV.  CONCLUSION

For the foregoing reasons, the court finds, by clear and convincing evidence, that Marc Christopher Turner is a sexually dangerous person under the Adam Walsh Act.  It is hereby ORDERED that Marc Christopher Turner be committed to the custody and care of the Attorney General pursuant to 18 U.S.C. § 4248.

Respectfully submitted, this 21st day of February, 2012.

THOMAS G. WALKER
United States Attorney

BY: /s/ Joshua B. Royster
JOSHUA B. ROYSTER
Attorney for Petitioner
Assistant United States Attorney
Civil Division
310 New Bern Avenue
Suite 800 Federal Building
Raleigh, NC  27601-1461
Telephone: (919) 856-4530
Facsimile: (919)856-4821
Email: joshua.royster@usdoj.gov
N. C. Bar# 28785

CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing has been served upon counsel for Respondent, by electronically filing the foregoing with the Clerk of Court this date, February 21, 2012, using the CM/ECF system which will send notification of such filing to the above.

> BY: /s/ Joshua B. Royster
> JOSHUA B. ROYSTER
> Attorney for Petitioner
> Assistant United States Attorney
> Civil Division
> 3l0 New Bern Avenue
> Suite 800 Federal Building
> Raleigh, NC 27601-l46l
> Telephone: (919) 856-4530
> Facsimile: (919)856-4821
> Email: joshua.royster@usdoj.gov
> N. C. Bar# 28785